FILED

MAR 20 2000

CLERK, U.S. DISTRICT COURT
ASTERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----ooOoo----

RICHARD M. BROOKS,

    Plaintiff,

  v.

PHYSICIANS CLINICAL LABORATORY INC., a Delaware Corporation, et al.; THE SACRAMENTO BUSINESS JOURNAL, INC., a North Carolina Corporation,

    Defendants.

NO. CIV. S-99-2155 WBS DAD

MEMORANDUM AND ORDER

----ooOoo----

    This action arises out of a 1997 article published by defendant The Sacramento Business Journal ("SBJ"), a weekly business newspaper serving greater Sacramento. The article reported that plaintiff Brooks, the Chief Financial Officer of Physician's Clinical Laboratory ("PCL"), had been terminated shortly after a federal investigation into PCL's billing practices. Plaintiff brings invasion of privacy and libel claims against SBJ, alleging that the news article libeled him by implying he was terminated because of the federal investigation and invaded his privacy by (1) reporting that he had been

1

40

terminated and (2) placing him in a "false light" by printing the slander of unidentified PCL executives without adequate investigation.[1]

SBJ moves for summary adjudication pursuant to Rule 56 of the Federal Rules of Civil Procedure, <u>see</u> Fed. R. Civ. P. 56(d), arguing that (1) plaintiff's libel claim should be limited to special damages; (2) plaintiff's "false light" privacy claim is duplicative of his libel claim and should, accordingly, be dismissed; and (3) plaintiff has failed to establish his "public disclosure of private fact" claim. The court grants SBJ's motion.

I.   <u>Facts</u>

Plaintiff was employed by PCL as its Senior Vice President and Chief Financial Officer ("CFO") from January 23, 1995 through July 29, 1997. In 1997, while plaintiff held these positions, the federal government investigated PCL for alleged improper billing practices involving the Medicare Program and the Civilian Health and Medical Program of the Uniformed Services. On July 25, 1997, PCL publicly announced in a press release that it had reached an agreement with the federal government to resolve its potential criminal and civil liability in relation to its billing practices. Plaintiff alleges that he was not involved in any criminal violations with respect to the purported improper billing practices that supposedly began before his

---

[1] Plaintiff brought wrongful termination, defamation, and invasion of privacy claims against defendant PCL. Default judgment was entered against PCL pursuant to Rule 55(a) of the Federal Rules of Civil Procedure on November 15, 1999. <u>See</u> Fed. R. Civ. P. 55(a).

2

tenure with PCL.  On July 29, 1997, PCL terminated plaintiff from his position at PCL, and he was ordered to leave PCL's offices that day under escort.

On August 1, 1997, SBJ printed an article (the "Article") stating in part that "Richard Brooks, chief financial officer at Physician's Clinical Laboratory Inc., was fired on July 29 after a federal investigation into the company's billing practices."  (Wright Decl. Ex. B).  The Article's headline stated "PCL executive fired following billing inquiry."  (Wright Decl. Ex. B).

On August 8, 1997, plaintiff telephoned Robertson, the author of the Article, telling her that the Article was false because he had not been terminated due to any involvement in criminal activities at PCL.  Plaintiff orally demanded a retraction.  Plaintiff alleges that Robertson told him that she had been told by internal sources at PCL that he had been terminated because of the audit.  Robertson stated that she would discuss plaintiff's demand for retraction with her editor. Robertson later contacted plaintiff, advising him that she had discussed the Article with her editor and that they would not retract the Article.  During this conversation, Robertson told plaintiff that "if he was unhappy he could write a letter to the editor and clarify the record as he saw it."  (Winston Decl. Ex. 2 at 66:18-19).

On February 19, 1999, Robertson stated during her deposition that no one at PCL told her that plaintiff had been terminated because of the criminal investigation of PCL and that she had reached this conclusion on her own based on the timing of

3

his firing.

II.  Summary Judgment

The court grants summary judgment to a moving party "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The party adverse to a motion for summary judgment may not simply deny generally the pleadings of the movant; the adverse party must designate "specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); see also Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Simply put, "a summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data."  Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).  The non-moving party must show more than a mere "metaphysical doubt" as to the material facts.  See Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986).

A.  Special Damages

Defendant SBJ argues that plaintiff's libel claim should be limited to special damages because plaintiff failed to make a written request to SBJ for retraction of the Article. Under the California Civil Code, a plaintiff is limited to special damages "[i]n any action for damages for the publication of libel in a newspaper" unless plaintiff "serve[d] upon the publisher, at the place of publication ..., a written notice specifying the statement claimed to be libelous and demanding that the same be corrected," and the publisher failed to correct

4

the error.[2]  See Cal. Civ. Code § 48a(1) (emphasis added). Whether plaintiff has met the requirements of section 48a is a question of law. See Gomes v. Fried, 136 Cal. App. 3d 924, 936 (1982).

Plaintiff did not make a written demand of retraction to SBJ. Instead, plaintiff contacted Robertson, the Article's author, and made an oral demand for retraction. Plaintiff does not cite, and the court could not find, any California case holding that an oral demand is adequate notice under section 48a.[3] Thus, the court looks to the plain language of section 48a, which explicitly states that written notice is required. The court is further persuaded that an oral demand is insufficient under section 48a because the California legislature amended section 48a specifically to require "written notice" as opposed to "notice."

Plaintiff argues that he substantially complied with section 48a because his oral demand met the purposes underlying section 48a, namely "to bring promptly the alleged libel to the newspaper's attention to facilitate the newspaper's investigative efforts in determining whether the statements in the initial article contained error and should be corrected." Freedom

---

[2] Special damages are "all damages which plaintiff alleges and proves that he has suffered in respect to his property, business, trade, profession or occupation, including such amount of money as the plaintiff alleges and proves he has expended as a result of the alleged libel ...." Cal. Civ. Code § 48a(4)(b).

[3] The only case discussing oral demands is a decision in the Southern District of New York, interpreting California law and holding that oral notice will not suffice under section 48a. See King v. American Broad. Co., Inc., 1998 WL 665141 (S.D.N.Y.).

5

1  Newspapers, Inc. v. Superior Court of Orange County, 4 Cal.4th
2  652, 657 (1992) (internal quotations omitted).  In Freedom
3  Newspapers, the plaintiff had submitted written notice to the
4  paper's editor, rather than to its publisher as required by the
5  express language of section 48a.  The court held that the
6  requirements of section 48a are met when the demand for
7  retraction is served upon (1) "the publisher," (2) "a person
8  designated by the publisher to receive such notices," or (3)
9  "someone employed by the newspaper other than the publisher or
10 the publisher's designee and the publisher acquires actual
11 knowledge of the request for correction."  Id. at 658.
12          In contrast, it is unclear that any such general
13 statements could be made about when notice other than written
14 notice would suffice to meet the mandates of section 48a.
15 Written notice is better designed than oral notice to inform the
16 publisher of the specific libelous statements and to give the
17 publisher opportunity to investigate the statements and, if
18 needed, to make a retraction.  More importantly, it is not the
19 role of this court to create exceptions to California statutory
20 law.
21          Plaintiff further argues that defendant SBJ should be
22 estopped from relying on section 48a because Robertson, the
23 Article's author, told plaintiff that the newspaper would not
24 print a retraction and that plaintiff could send a letter to the
25 editor objecting to the Article.  Plaintiff argues that, as a
26 result of Robertson's statements, he felt that he had no recourse
27 other than to voice his objections in a letter to the editor and,
28 thus, did not submit a formal written letter of retraction.

6

1  Plaintiff relies on <u>Freedom Newspapers</u> for the proposition that
2  the court can apply estoppel principles to section 48a.  <u>See</u>
3  <u>Freedom Newspapers</u>, 4 Cal.4th at 658 n.3 ("We recognize that
4  there may be circumstances in which a newspaper is estopped to
5  deny that the notice given is sufficient, but we need not, and do
6  not, address in this case the issue of estoppel, because it is
7  not raised on the facts before us."). However, the courts'
8  statement in <u>Freedom Newspapers</u> regarding estoppel were made in a
9  different context, namely whether notice must be served on the
10 publisher as required by section 48a.  Plaintiff does not cite,
11 nor could the court find, any cases applying estoppel principles
12 to the written notice requirement contained in section 48a.
13 Indeed, the court did not find any cases applying estoppel
14 principles to any of the requirements contained in section 48a.
15          Even assuming that estoppel could apply to the written
16 notice requirement, the facts of this case do not support an
17 estoppel theory.  Plaintiff has produced no evidence that
18 Robertson told him not to send a written demand for retraction to
19 the newspaper, nor has plaintiff presented evidence that SBJ had
20 a policy of not accepting written demands for retraction.
21 Additionally, Robertson was under no duty to advise plaintiff of
22 the written demand requirement.  In sum, plaintiff made the
23 decision not to send a written demand for retraction solely on
24 his own.  Application of estoppel principles is therefore
25 improper.
26          The court concludes that plaintiff failed to comply
27 with the plain language of section 48a by failing to serve
28 written notice on SBJ.  Thus, plaintiff's libel claim against SBJ

is limited to special damages.[4]

B.  False Light Claim

Defendant argues that plaintiff's claim for false light invasion of privacy is duplicative of plaintiff's libel claim and, therefore, should be dismissed.[5]  "When an action for libel is alleged, a false-light claim based on the same facts ... is superfluous and should be dismissed."  McClatchy Newspapers, Inc. v. Superior Court of Fresno County, 189 Cal. App. 3d 961, 965 (1987); see also Couch v. San Juan Unified Sch. Dist., 33 Cal. App. 4th 1491, 1504 (1995).

Plaintiff argues that his libel claim and his false light claim are factually distinct.  He argues that his false light claim is based on a theory that the Article contained a defamatory implication that came from an unidentified source and that SBJ was at fault, along with the unidentified source, for failing to conduct an adequate investigation before republishing the purported implication.  Plaintiff's libel claim is based on the alternative theory that the Article contained a defamatory implication that had no source and SBJ alone was at fault for the

---

[4]  Plaintiff also argues that he substantially complied with the requirement of section that a written demand be served on the publisher by making an alleged oral demand on the reporter.  He further argues that partial summary judgment should be defeated because he needs to conduct additional discovery as to whether the editor of the paper had the authority to receive retraction notices.  The court does not consider either issue because plaintiff's failure to make a written demand is dispositive.

[5]  California recognizes four distinct torts encompassed under the right to privacy: (1) intrusion, (2) public disclosure of private facts, (3) false light in the public eye, and (4) appropriation.  See Kapellas v. Kofman, 1 Cal.3d 20, 35 n.16 (1969).

8

1  alleged defamatory implication.
2        Both the false light claim and the libel claim are
3  based on the same alleged defamatory statement.  That plaintiff
4  has two separate theories of fault for one alleged injury fails
5  to create a libel claim and a separate false light claim.
6  Instead, plaintiff has a single claim for libel with two
7  alternative theories of fault.
8        In <u>Kapellas v. Kofman</u>, 1 Cal.3d 20 (1969), plaintiff
9  brought three causes of action against a newspaper publisher: (1)
10 libel against herself; (2) libel against her children; and (3)
11 false light invasion of her children's privacy.  The court stated
12 that if the false light claim rested on "the unwarranted
13 publication by defendant of intimate details of [the children's]
14 private [lives]," the allegation would state a cause of action
15 separate from the libel claim.  <u>Id.</u> at 35 (internal quotations
16 omitted).  "In such an action a plaintiff does not rely upon the
17 inaccuracy of the content of an article; instead, he charges that
18 even if accurate the publication of the facts interferes with his
19 right to be let alone."  <u>Id.</u> (internal quotations omitted).  In
20 comparison, the court stated that the false light privacy claim
21 should be dismissed if it rested on the allegedly false nature of
22 the editorial statements.  Here, plaintiff's false light privacy
23 claim and libel claim rest on the falsity of the Article's
24 implication.  Plaintiff's false light claim is duplicative of his
25 libel claim and should, accordingly, be dismissed.
26 ///
27 ///
28 ///

C.   Publication of a Private Fact

Plaintiff alleges that defendant SBJ invaded his privacy by publishing the allegedly private fact of his termination from PCL. To state a claim for the publication of a private fact, a plaintiff must establish the following elements: (1) public disclosure (2) of a private fact (3) the disclosure of which would be highly offensive and objectionable to the reasonable person. See Sipple v. Chronicle Publ'g Co., 154 Cal. App. 3d 1040, 1045 (1984). "[D]ue to the supreme mandate of the constitutional protection of freedom of the press even a tortious invasion of one's privacy is exempt from liability if the publication of private facts is truthful and newsworthy." Id. at 1046. Defendant argues that plaintiff cannot establish a claim for publication of a private fact because plaintiff's termination was newsworthy and not highly offensive to a reasonable person.[6]

Both newsworthiness and offensiveness can be decided on a motion for summary adjudication because, in this context, First Amendment concerns (i.e., freedom of the press) are implicated. "While the crucial test as to whether to grant a motion for summary judgment remains the same in free speech cases (i.e., whether there is a triable issue of fact presented in the case), the courts impose more stringent burdens on one who opposes the motion and require a showing of high probability that the plaintiff will ultimately prevail in the case." Id. at 1046. "In the absence of such showing the courts are inclined to grant

---

[6] The parties do not dispute that plaintiff can establish the other elements of his claim for public disclosure of a private fact.

10

the motion and do not permit the case to proceed beyond the summary judgment stage." Id. (citations omitted). Thus, where there is not a high probability that plaintiff will prevail on the issues of newsworthiness and offensiveness, the court may grant summary judgment in favor of defendant on plaintiff's claim for public disclosure of private facts. See, e.g., id. at 1050 (deciding newsworthiness as a matter of law).

Plaintiff has not shown that he has a high probability of prevailing on the issue of newsworthiness. "If the contents of a ... publication are of legitimate public concern, the plaintiff cannot establish ... the lack of newsworthiness." Shulman v. Group W Prod., Inc., 18 Cal. 4th 200, 215 (1998). "Courts have generally protected the privacy of otherwise private individuals involved in events of public interest by requiring that a logical nexus exist between the complaining individual and the matter of legitimate public interest." Id. at 223-24 (internal quotations omitted). "The contents of the publication ... are protected only if they have some substantial relevance to a matter of legitimate public interest." Id. at 224 (internal quotations omitted). "Thus, recent decisions have generally tested newsworthiness with regard to such individuals by assessing the logical relationship or nexus, or lack thereof, between the events or activities that brought the person into the public eye and the particular facts disclosed." Id.

Plaintiff argues that his termination from PCL had no substantial connection to PCL's resolution of the criminal investigation of its billing practices; i.e., there was not a logical nexus between the two events, especially because

11

plaintiff was not involved in any criminal activities. However, the proximity in time between the date of plaintiff's termination and PCL's settlement of the investigation of its billing practices is alone so striking as to raise an inference of a causal relationship between the two events. On July 25, 1997, PCL publically announced that it had entered into a settlement agreement with the federal government regarding its billing practices. Four days later, on July 29, 1997, plaintiff was terminated. A reporter could have reasonably inferred that the two events were causally connected. The federal government had been investigating the very aspect of PCL that was under plaintiff's charge as CFO. Thus, plaintiff's termination from the position of CFO was newsworthy. In sum, a logical connection may reasonably be inferred between the resolution of the investigation of PCL's billing practices and the termination of its Chief Financial Officer four days later. Plaintiff has failed to show that he has a high probability of success on the issue of newsworthiness. Thus, summary judgment on plaintiff's claim for publication of a private fact is proper.[7]

IT IS THEREFORE ORDERED that defendant's motion for summary adjudication be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that plaintiff's libel claim is limited to special damages.

///
///

---

[7] Having found that plaintiff cannot establish the element of newsworthiness, the court does not consider whether plaintiff could establish the element of offensiveness.

AND IT IS FURTHER ORDERED that plaintiff's false light privacy claim and publication of private fact claim be, and the same are, hereby DISMISSED.

DATED: March 20, 2000

*/s/ William B. Shubb*
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

United States District Court
for the
Eastern District of California
March 20, 2000

* * CERTIFICATE OF SERVICE * *

2:99-cv-02155

Brooks

v.

Physicians Clinical

---

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Eastern District of California.

That on March 20, 2000, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office, or, pursuant to prior authorization by counsel, via facsimile.

    Dennis A Winston                                         SH/WBS
    Moskowitz Brestoff Winston and Blinderman
    1880 Century Park East
    Ste 350
    Los Angeles, CA   90067

    Nelson E Brestoff
    Moskowitz Brestoff Winston and Blinderman
    1880 Century Park East
    Ste 350
    Los Angeles, CA   90067

    James F. Brelsford
    Perkins Coie LLP
    250 Montgomery Street
    16th Floor
    San Francisco, CA   94104

    R Parker White
    Poswall and White
    1001 G Street
    Suite 301
    Sacramento, CA   95814

Jack L. Wagner, Clerk

by: Deputy Clerk